**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE BEAR STEARNS MORTGAGE
PASS-THROUGH CERTIFICATES
LITIGATION

Case No. 1:08-cv-08093-LTS

**JOINT DECLARATION OF DAVID R. STICKNEY AND DANIEL S. SOMMERS**
**IN SUPPORT OF PRELIMINARY APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

Page

I.  PRELIMINARY STATEMENT ........................................................................................1

II. HISTORY OF THE ACTION ........................................................................................5

    A.    The Commencement Of The Action, And The Lead
           Plaintiff Appointment Process ........................................................................6

    B.    Two Rounds Of Briefing On Motions To Dismiss
           And Filing Of The Third Amended Complaint ........................................7

    C.    Defendants' Motion For Reconsideration And
           Plaintiffs' Motion For Leave To Amend The
           Complaint ........................................................................................8

    D.    Obtaining Documents And Information ........................................................9

III. THE SETTLEMENT ........................................................................................10

    A.    Reasons For The Settlement ........................................................................11

    B.    The Proposed Class Should Be Certified For
           Settlement Purposes ........................................................................13

    C.    The Proposed Notice Meets The Requirements Of
           Due Process And Rule 23 Of The Federal Rules Of
           Civil Procedure ........................................................................18

We, David R. Stickney of the law firm of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz" or "BLB&G") and Daniel S. Sommers of the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), submit this joint declaration in support of Plaintiffs' motion for preliminary approval of the proposed Settlement (ECF No. 262). We are partners in our respective law firms and have actively supervised and participated in the prosecution of this Action. As a result, we have personal knowledge of all material matters related to this Action. The statements in this declaration are made based on our personal knowledge as to each of our respective firm's participation as Lead Counsel, unless otherwise indicated.

I.   **PRELIMINARY STATEMENT**

1.   Our law firms are the Court-appointed Lead Counsel in this Action. This Declaration summarizes the highlights of the litigation, which commenced over six years ago, the events leading to the Settlement, and the basis upon which Lead Counsel and the Public Employees' Retirement System of Mississippi ("MissPERS") and New Jersey Carpenters Health Fund ("New Jersey Carpenters") (collectively, "Lead Plaintiffs"), and the additional Plaintiffs, recommend its preliminary approval.[1] We anticipate that, if the Court grants preliminary approval, additional support for the Settlement will be provided for final approval of the Settlement.

2.   The Settlement requires Defendants to pay $500 million in cash and also up to $5 million for Litigation Costs and Notice and Administration Expenses. The terms of the

---

[1] "Plaintiffs" refers to MissPERS, New Jersey Carpenters, Boilermaker Blacksmith National Pension Trust ("Boilermaker Pension Trust"), Police and Fire Retirement System of the City of Detroit ("Detroit P&F"), the State of Oregon, by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board on behalf of the Oregon Public Employees Retirement System (collectively, "OPERS"), Iowa Public Employees' Retirement System ("IPERS"), and San Antonio Fire and Police Pension Fund ("San Antonio F&P").

Settlement are set forth in the Stipulation and Agreement of Settlement ("Stipulation"), filed with the Court on February 2, 2015 (ECF No. 264).[2]  The Settlement benefits the Class by conferring a guaranteed and substantial cash benefit, and avoids the risks and expenses of continued litigation, including the risk of no recovery at all or recovering less than the Settlement after substantial delay.

3.      In entering into the Stipulation, Plaintiffs and Lead Counsel were fully informed about the strengths and weaknesses of the case.  As detailed below, Lead Counsel conducted an extensive investigation; filed five class action complaints; briefed two rounds of motions to dismiss and related additional briefing regarding Defendants' request for certification for interlocutory review and motion to stay; briefed Plaintiffs' motion for leave to amend the Complaint and Defendants' motion for reconsideration – all involving rapidly-evolving areas of law with little or no controlling precedent; obtained over 15 million pages of documents and 55 million additional pages of loan files; reviewed and analyzed the documents; and consulted with experts on issues requiring specialized knowledge such as negative causation, materiality, damages, mortgage loan underwriting, and statistics.

4.      The Settlement was ultimately reached only after direct negotiations between experienced counsel and extensive arm's-length negotiations overseen by the Honorable Daniel Weinstein (Ret.).  The Declaration of the Mediator Hon. Daniel H. Weinstein (Ret.) in Support of Approval of Class Action Settlement is attached hereto as Exhibit 1 ("Mediator's Statement" or "Weinstein Decl.").

---

[2] Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation.

5. Based upon our experience, evaluation of the facts and applicable law and our recognition of the risk and expense of continued litigation, Lead Plaintiffs and Lead Counsel submit that the proposed Settlement is fair, reasonable and adequate. We believe that the Settlement represents a very good result and is in the best interest of the Settlement Class.

6. In addition to understanding the risks related to their claims and damages, Lead Plaintiffs and Lead Counsel were familiar with Defendants' affirmative defenses – including, for example, defenses based on whether certain claims were time-barred; defenses based on investors' "actual knowledge" of the false and misleading statements at the time they purchased the securities; and the "negative causation" defense to damages pursuant to Section 11(e) of the Securities Act of 1933 ("Securities Act") (*i.e.*, the causes of any claimed damages were factors other than the alleged untrue statements and omissions, such as the national economic downturn).

7. Representatives of Lead Plaintiffs supervised Lead Counsel, authorized negotiations, remained informed throughout the settlement negotiations, and ultimately approved the Settlement. Among other things, Lead Plaintiffs: (i) conferred with Lead Counsel on a regular basis regarding the status of the Action; (ii) participated in discussions with Lead Counsel concerning significant developments in the litigation, including case strategy; (iii) reviewed and commented on significant pleadings submitted in the Action, including but not limited to the amended complaints, motion to dismiss briefing and orders and related motions, and mediation statements; (iv) reviewed and discussed with Lead Counsel certain information and documents obtained in the Action; and (v) monitored all significant matters throughout the Action. George W. Neville and Martin Millette III (Mississippi Office of the Attorney General Executive Counsel) participated in person at the mediation. Both MissPERS

and New Jersey Carpenters approved the Settlement. The Joint Declaration of Lead Plaintiffs in Support of Preliminary Approval of Settlement is attached hereto as Exhibit 2 ("Lead Plaintiffs Decl.").

8. To put the amount of the Settlement into context, to our knowledge this is the largest recovery ever from a class action arising from the sale of mortgage-backed securities. *See, e.g., Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 10-cv-00302 (MRP) (C.D. Cal.), *appeal pending*, C.A. No. 14-55093 (9th Cir.) ($500 million for 429 offerings; no separate fund for costs); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.,* 08-cv-10841 (JSR) (S.D.N.Y.) ("*Merrill Lynch*") ($315 million for 18 offerings); *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, 08-cv-1713 (PKC) (E.D.N.Y.) ("*J.P. Morgan*") ($280 million for 26 offerings); *N.J. Carpenters Vacation Fund v. HarborView Mortg. Loan Trust 2006-4*, 08-cv-5093 (LAP) (S.D.N.Y.) ($275 million for 14 offerings); *In re Wells Fargo Mortg.-Backed Certificates Litig.,* 09-cv-1376 (LHK) (N.D. Cal.) ("*Wells Fargo*") ($125 million for 28 offerings); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.,* 09-cv-2137 (KBF) (S.D.N.Y.) ("*Morgan Stanley*") ($95 million for 29 offerings); *In re Lehman Bros. Mortg.-Backed Sec. Litig.,* 08-cv-6762 (LAK) (S.D.N.Y.) ($40 million for 17 offerings); *Mass. Bricklayers and Masons Trust Funds v. Deutsche Alt-A Sec., Inc.,* 08-cv-3178 (LDW) (E.D.N.Y.) ($32.5 million for 2 offerings); *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.,* 09-cv-1110 (HB) (S.D.N.Y.) ("*Goldman Sachs*") ($26.6 million for 1 offering); *In re: Wash. Mut. Mortg.-Backed Sec. Litig.,* C09-0037 (MJP) (W.D. Wash.) ($26 million for 6 offerings); *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.,* 08-cv-1418 (E.D.N.Y.) ($24.975 million for 2 offerings); *Genesee Cnty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3,* 09-cv-300 (JB) (D.N.M.)

($11.25 million for 3 offerings); *Tsereteli v. Residential Asset Securitization Trust 2006-A8,* 08-cv-10637 (LAK) (S.D.N.Y.) ($11 million for 1 offering).

## II.    HISTORY OF THE ACTION

9.    The Action commenced on August 20, 2008, and continued until the parties signed the Stipulation of Settlement on February 2, 2015. During the course of the litigation, the parties engaged in extensive motion practice, including briefing on two rounds of motions to dismiss as well as related briefing regarding Defendants' request for interlocutory appeal, motion to stay, and motion for reconsideration, and Plaintiffs' motion for leave to amend the Complaint.

10.    In response to the Court's request (ECF No. 233), while motions for reconsideration and to amend were pending (ECF Nos. 185, 186, 189, 191, 198, 199, 201, 202, 203), the parties filed a Joint Response identifying the 22 Offerings remaining at issue in the case, including the 8 Undisputed Offerings for which there is no dispute as to timeliness and that would proceed regardless of the outcome of the pending motions, and the 14 Disputed Offerings for which Defendants contend that the statute of repose expired. ECF No. 235. These are the 22 Offerings that are the subject of this Settlement.

11.    As discussed below, the parties exchanged documents and information in connection with the mediation before Judge Weinstein. Lead Counsel thereafter obtained and analyzed a substantial volume of documents and testimony from percipient witnesses.

12.    As detailed in Judge Weinstein's Declaration, Exhibit 1 hereto, and discussed below, the parties ultimately accepted Judge Weinstein's mediator's recommendation of $500 million with an additional payment of up to $5 million for litigation and administration costs.

13.	The first class action complaint (the "Initial Complaint") was filed on August 20, 2008, against Defendants and certain other defendants in the Supreme Court of the State of New York, County of New York, on behalf of all persons or entities who purchased certain certificates pursuant or traceable to an offering of mortgage loan pass-through certificates, issued by Bear Stearns Mortgage Funding Trust 2006-AR1. Defendants subsequently removed the case to the United States District Court, Southern District of New York.

14.	On May 15, 2009, New Jersey Carpenters and Boilermaker Pension Trust filed the First Consolidated Amended Securities Class Action Complaint (the "First Amended Complaint"), alleging Securities Act claims against Defendants and others on behalf of a class of persons or entities that purchased or otherwise acquired beneficial interests in certain offerings pursuant and/or traceable to two specified registration statements. On July 9, 2009, Pension Trust Fund for Operating Engineers filed a class action complaint in a related action in this District, Case No. 09-cv-6172 (the "Operating Engineers Complaint"), alleging Securities Act claims against Defendants and others on behalf of a class of purchasers of certificates in 11 of the same offerings as in the First Amended Complaint, as well as additional offerings (the "Operating Engineers Action").

15.	On December 23, 2009, the Court consolidated the Operating Engineers Action into Case No. 08-cv-8093, re-designating the consolidated action as *In re Bear Stearns Mortgage Pass-Through Certificates Litigation*, and appointed MissPERS and New Jersey Carpenters as Co-Lead Plaintiffs and Bernstein Litowitz Berger & Grossmann LLP and Cohen Milstein Sellers & Toll PLLC as Co-Lead Counsel.

16.     On February 19, 2010, Lead Plaintiffs and Plaintiff Boilermaker Pension Trust filed the Consolidated Class Action Complaint (the "First Consolidated Complaint"), alleging Securities Act claims against Defendants and others on behalf of a class of persons or entities that purchased or otherwise acquired beneficial interests in certain offerings pursuant and/or traceable to two specified registration statements.

### B.     Two Rounds Of Briefing On Motions To Dismiss And Filing Of The Third Amended Complaint

17.     After briefing on Defendants' first round of motions to dismiss, on September 28, 2010, the Court granted Plaintiffs leave to amend the complaint. Accordingly, on October 29, 2010, Lead Plaintiffs, Plaintiffs Boilermaker Pension Trust, Detroit P&F, OPERS, IPERS, San Antonio F&P, and the City of Fort Lauderdale Police & Fire Retirement System filed the Third Amended Class Action Complaint ("Third Complaint" or the "Complaint") alleging Securities Act claims against Defendants and others on behalf of a class of all persons or entities who purchased or otherwise acquired beneficial interests in certain certificates in 14 offerings issued pursuant and/or traceable to two specified registration statements.

18.     On December 3, 2010, Defendants filed a motion to dismiss the Third Complaint. ECF No. 138. Defendants argued, *inter alia,* that the allegations regarding departures from the underwriting guidelines are not actionable; the appraisal allegations and the credit rating allegations failed to state actionable claims; the impact of external market factors was disclosed; the Complaint did not allege that any misrepresentation affected the loans in the pools or was material; Plaintiffs' sole remedy was the cure of non-complying loans; Plaintiffs' claims were time-barred; and Plaintiffs failed to allege cognizable harm. ECF No. 140. Plaintiffs filed their opposition to the motion to dismiss on January 26, 2011, responding, *inter alia*, that the offering documents contained untrue statements and omissions, the Complaint alleged injury under

Section 11(e) of the Securities Act and the federal securities laws provides a remedy for alleged untrue statements and omissions in offering documents, and Plaintiffs' claims were timely. ECF No. 144. Defendants filed a reply in support of their motion to dismiss on February 24, 2011. ECF No. 153.

19. On March 30, 2012, the Court granted in part and denied in part Defendants' motion to dismiss the Third Complaint. ECF No. 167. The Court dismissed claims "premised on the alleged unreliability of the ratings of securities included in the investment pools," but denied the motion in all other respects.

20. Defendants subsequently filed their Answer to the Third Complaint and also moved for interlocutory appellate review and to stay the Action pending the outcome of the interlocutory appeal motion, or in the alternative, stay the Action pending the outcome of the appeal before the Second Circuit in *Police and Fire Retirement System of the City of Detroit v. IndyMac MBS, Inc.,* No. 11-2998-cv (2d Cir.) ("*IndyMac*"). On May 16, 2012, the Court stayed the Action pending the outcome of *IndyMac*.

C. **Defendants' Motion For Reconsideration And Plaintiffs' Motion For Leave To Amend The Complaint**

21. Following the Second Circuit's September 6, 2012 decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA-IBEW*"), Plaintiffs moved for leave to file an amended complaint to include claims arising from 26 offerings in accordance with *NECA-IBEW* and to lift the stay of proceedings. Thereafter, the Second Circuit decided *IndyMac* and the Court restored the Action to the Court's active calendar. The parties submitted additional briefing regarding Plaintiffs' motion for leave to amend, and Defendants' motion for reconsideration in light of *IndyMac*.

22.     On December 2, 2013, in response to the Court's request, the parties filed a Joint Response identifying the 22 Offerings remaining at issue in the case and that are subject to this Settlement, including the 8 Undisputed Offerings for which there is no dispute as to timeliness and that would proceed regardless of the outcome of the pending motions, and the 14 Disputed Offerings for which Defendants contend that the statute of repose expired.

### D.     Obtaining Documents And Information

23.     Following the Court's order sustaining the Third Complaint, on November 1, 2013, Plaintiffs propounded discovery to obtain documents from Defendants. The parties disputed whether discovery was stayed under the Private Securities Litigation Reform Act of 1995 ("PSLRA") as a result of the pendency of Defendants' motion for reconsideration. After briefing, the Court determined that the PSLRA's statutory stay remained in place. Subsequently, the Court approved Plaintiffs' unopposed request for leave to serve document-preservation subpoenas on certain non-parties.

24.     On August 4, 2014, the parties informed the Court that they had agreed to exchange documents and information in connection with an upcoming mediation before a private mediator. ECF No. 251. In order to facilitate the exchange of information, the parties submitted to the Court a Confidentiality Stipulation and Order Relating to Exchange of Mediation Material Containing Non-Party Borrower Information, which the Court approved. ECF No. 253. As explained in the accompanying Mediator's Statement, the parties held regular and periodic telephonic conferences with the mediator concerning the ongoing document production. The mediator assisted the parties in resolving disputes over the scope of the production.

25.     Lead Counsel obtained a substantial volume of evidence, the analysis of which provided Plaintiffs with a thorough understanding of the strengths and weaknesses of the claims and aided them in their consideration and evaluation of the fairness of the Settlement.

### III.  **THE SETTLEMENT**

26.     The Settlement was the result of extensive arm's-length negotiations between the parties.  The Settlement provides the Class a substantial benefit and eliminates the significant risks of continued litigation under circumstances where a favorable outcome could not be assured.  Lead Counsel believe that the Settlement is fair, reasonable, and an excellent result for Class Members considering the risk of recovering much less or even nothing after substantial delay.

27.     The parties commenced settlement discussions in June 2014, and exchanged demands and counter-offers throughout the summer of 2014.  When the parties reached an impasse, they agreed to mediate before Judge Weinstein, whose mandate included monitoring the exchange of information and documents in connection with the mediation process.  Judge Weinstein monitored the progress and was available to resolve any disputes over the scope of production.  Judge Weinstein, together with Jed Melnick of JAMS, held regular and periodic telephonic status calls to oversee the ongoing production and resolve disputes.  Weinstein Decl. ¶12.

28.     In advance of the October 30, 2014 mediation, the parties prepared detailed opening and reply mediation statements.  Although the mediation session ended without a settlement agreement, the parties remained in communications with the mediator.  After additional negotiation, the parties accepted Judge Weinstein's recommendation to settle the Action for $500 million in cash and payment of litigation expenses and claims administration expenses up to $5 million, subject to satisfaction of certain conditions such as completion of Plaintiffs' diligence, negotiation of a detailed settlement agreement and Court approval.  *See* Weinstein Decl. ¶11, attached hereto as Exhibit 1.

29.     On February 2, 2015, after negotiation of the detailed settlement agreement and related exhibits, the parties executed the Stipulation.  On the same day, Lead Plaintiffs filed a motion for preliminary approval of the Settlement.

## A.     Reasons For The Settlement

30.     Lead Plaintiffs and Lead Counsel endorse the Settlement.  *See* Lead Plaintiffs Decl., attached hereto as Exhibit 2.  Lead Plaintiffs are sophisticated institutional investors who have actively overseen the prosecution of the Action.  Lead Counsel are two law firms that specialize in complex securities litigation, including litigation involving RMBS, and are highly experienced in such litigation.  Based on their experience and knowledge of the facts and applicable law, Lead Counsel and Lead Plaintiffs determined that the Settlement was in the best interest of the Class.

31.     Although Lead Plaintiffs and Lead Counsel believe that the claims asserted in the Action are meritorious, continued litigation against Defendants posed significant risks that made any recovery uncertain.  From the outset, Lead Counsel and Lead Plaintiffs appreciated the unique and significant risks inherent in this litigation.  At the time of the initial filing, there was little established precedent for RMBS litigation, and no court had sustained claims under the federal securities laws for purchasers of RMBS securities.  Likewise, no court at that time had certified an RMBS class or accepted plaintiffs' damages theories arising from such claims.  *See N.J. Carpenters Health Fund v. Residential Capital, LLC,* 272 F.R.D. 160 (S.D.N.Y. 2011) (denying class certification), *aff'd,* 477 Fed. Appx. 809 (2d Cir. 2012) (unpubl.).  While Lead Plaintiffs believe their claims are strong, they were aware of the limited precedent that existed for RMBS-specific class litigation, and how that limited precedent could influence the inevitable dispositive motions, not to mention at trial and on appeal.

32.     Lead Counsel and Lead Plaintiffs were aware that they faced numerous affirmative defenses to the claims at issue. For example, Defendants argued throughout that claims on certain of the Offerings were time-barred. This was an area of evolving legal precedent during the course of the litigation. Defendants argued that the first complaint was filed more than one year after Plaintiffs knew or should have known they had viable claims, including as a result of numerous news articles that were cited in the Initial Complaint that, according to Defendants, should have triggered inquiry notice. Defendants also contended that: (i) Plaintiffs had "actual knowledge" of the false and misleading statements at the time they purchased the securities, creating a complete defense to liability; and (ii) the evidence did not support a finding that the offering documents contained any material misstatements, and, in fact, investors were warned of certain risks. Defendants contended that investors were warned that a meaningful dip in housing prices could result in losses, issuers made exceptions to underwriting guidelines, loan pools included sub-prime loans, and the mortgage industry faced difficulties and changed economic conditions which could adversely affect the value of the certificates.

33.     Even assuming that Plaintiffs prevailed at trial in establishing untrue statements and omissions in the offering documents, recoverable damages under Section 11 are based on the lesser of the difference between the purchase price of the security and (i) the value of the security on the date the lawsuit was filed; or (ii) the price at which the security was disposed. Section 11 damages are also subject to reduction or elimination as a result of "negative causation" (*i.e.,* that some or all of the losses were attributable to causes other than the misstatements or omissions). Defendants contend that any losses were caused by factors other than untrue statements in the offering documents (such as the collapse of the economy in general, and the housing market in particular), and they would have had additional opportunities to persuade the Court or a jury that

their position was meritorious. At the very least, Defendants' "negative causation" defense was an argument that would have to be resolved through extensive expert testimony.

34.     Moreover, Plaintiffs faced additional challenges to proving their claims based on the passage of time. The alleged misconduct occurred nine to ten years ago. It would take many months or more to complete full formal discovery, and then proceed to summary judgment and *Daubert* motions. The Settlement enables the Class to recover a substantial sum of money, while avoiding continued protracted litigation and significant challenges.

35.     In addition to the foregoing defenses, Defendants opposed certification of a class for litigation purposes. Although courts have granted motions to certify litigation classes of investors in RMBS, at least one district court has denied such a motion. *Compare Merrill Lynch,* No. 08-cv-10841-JSR (S.D.N.Y. June 15, 2011), ECF No. 149 (certifying litigation class of RMBS investors), *with N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08-cv-5653-PAC, 2011 WL 3874821 (S.D.N.Y Aug. 16, 2011) (certifying litigation class of RMBS investors), with *Residential Capital,* 272 F.R.D. 160 (S.D.N.Y. 2011) (denying motion to certify litigation class of RMBS investors).

36.     The Settlement eliminates the above litigation risks and guarantees the Class a favorable cash recovery. As explained above (*see* ¶8), the Settlement amount here – $500 million and up to $5 million for costs – is the largest recovery to our knowledge from a class action arising from the sale of mortgage-backed securities. Lead Counsel firmly believe that settling the Action at this juncture is in the best interest of the Class.

**B.     The Proposed Class Should Be Certified For Settlement Purposes**

37.     In connection with the Settlement, the parties have stipulated to certification of the following Class for litigation purposes:

All Persons who: (i) prior to July 9, 2009, purchased or otherwise acquired offered RMBS pursuant or traceable to offerings BALTA 2006-5, BALTA 2006-6, BALTA 2006-7, BALTA 2006-8, BALTA 2007-1, BSARM 2006-4, BSARM 2007-1 (certificates backed by groups 1, 3 and 5 only), or BSARM 2007-3, and were damaged thereby; (ii) prior to August 20, 2008, purchased or otherwise acquired offered RMBS pursuant or traceable to offering BSMF 2006-AR1, and were damaged thereby; or (iii) prior to May 15, 2009, purchased or otherwise acquired offered RMBS pursuant or traceable to offerings BSMF 2006-AR2, BSMF 2006-AR3, BSMF 2006-AR4, BSMF 2006-AR5, BSMF 2007-AR1, BSMF 2007-AR3, SAMI 2006-AR4, SAMI 2006-AR5, SAMI 2006-AR6, SAMI 2006-AR7, SAMI 2006-AR8, SAMI 2007-AR1 (certificates backed by group 1 only), or SAMI 2007-AR2 (certificates backed by group 1 only), and were damaged thereby.

38. Defendants, their related parties, and persons and entities who have separately asserted or pursued their claims against Defendants (as stated on the confidential Appendix 1 to the Stipulation) are excluded from the Class. Also excluded from the Class is anyone who excludes himself, herself or itself by filing a valid request for exclusion.

39. Lead Counsel respectfully submit that the stipulated and proposed Class satisfies all the requirements of Rules 23(a) and (b). For example, the proposed Class readily satisfies the requirement of numerosity, which the Second Circuit has found presumed when the proposed class would have at least 40 members. *See, e.g., Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995). Other courts to consider the issue in the context of RMBS class actions have readily determined that numerosity is satisfied. *See, e.g., Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 280 F.R.D. 130, 134 (S.D.N.Y. 2012); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 104-05 (S.D.N.Y. 2011); *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 233 (S.D.N.Y. 2012); *N.J. Carpenters Health Fund v. Residential Capital, LLC,* No. 08 CV 8781 (HB), 08 CV 5093 (HB), 2012 WL 4865174, at *1 n.1 (S.D.N.Y. Oct. 15, 2012); *N.J. Carpenters Health Fund v. Residential Capital, LLC,* 288 F.R.D. 290, 296 (S.D.N.Y. 2013); *Tsereteli v. Residential Asset Securitization Trust 2006-A8,* 283 F.R.D. 199, 206 (S.D.N.Y. 2012).

40.     Here, the Class includes investors in the Certificates in 22 Offerings of RMBS.  In similar RMBS class actions, experts reviewing certain transaction data produced by defendants and third parties have counted more than 700 class members.  This is consistent with information from databases obtained by Plaintiffs in this case, through which Plaintiffs identified at least 125 potential Class Members.  Based on this analysis, and the experience from similar RMBS class actions, we have a high degree of confidence that the Class contains hundreds or thousands of members.

41.     As reflected in the attached notification issued by Defendants as required by the Class Action Fairness Act of 2005 ("CAFA"), Exhibit 3 hereto, Defendants likewise have concluded that there is a sound factual basis to believe that there are several thousand Class Members, and have estimated at least 1,854.  We are informed by Defendants that they timely mailed the CAFA notice on February 12, 2015.

42.     The requirement of "commonality" is also readily satisfied.  The Second Circuit has recognized that federal securities cases easily meet the commonality requirement, because commonality is "plainly satisfied [where] the alleged misrepresentations in the prospectus relate to all the investors, [because] the existence and materiality of such misrepresentations obviously present important common issues."  *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972).

43.     Here, Defendants' misrepresentations and omissions were common across the Offerings.  Examples of the questions of law and fact common to all Class Members include the following:

(1) Whether Defendants made materially false and misleading statements in the offering documents regarding the loan purchasing and underwriting standards;

(2) Whether Defendants systematically abandoned the loan purchasing and underwriting standards;

(3) Whether the offering documents misstated or omitted material information about the appraisal standards;

(4) Whether Plaintiffs' and Class Members' claims are subject to common affirmative defenses; and

(5) Whether the Class sustained damages and the appropriate measure thereof.

44.     All of the Offerings were assembled by the same sponsor, depositor and underwriter, and the Offerings contain loans from many of the same originators.

45.     The Class also satisfies the "typicality" requirement.  Plaintiffs and Class Members assert identical legal theories arising from the same course of conduct by Defendants; namely, Defendants' systematic acquisition and securitization of noncompliant loans and the offering documents' misstatements regarding the issued Certificates.

46.     There is also no question that the Class has been, and will continue to be, adequately represented, as required by Federal Rule of Civil Procedure 23(a)(4).  Plaintiffs' interests are not antagonistic with the Class, no fundamental conflict exists, and Plaintiffs' interests are directly aligned with the interests of all the Class Members.

47.     Lead Plaintiffs are experienced as class representatives in securities class actions, including in several RMBS class actions within this Circuit.[3]  Lead Plaintiffs have already demonstrated their commitment to prosecuting this Action on behalf of the putative class.  Lead Plaintiffs received and reviewed periodic updates and other documents concerning the litigation,

---

[3] *See, e.g., Morgan Stanley,* 09-cv-2137 (KBF) (S.D.N.Y.); *Merrill Lynch,* 08-cv-10841 (JSR) (S.D.N.Y.); *Goldman Sachs,* 09-cv-1110 (HB) (S.D.N.Y.); *J.P. Morgan,* 08-cv-1713 (PKC) (E.D.N.Y.).

reviewed pleadings and consulted with their counsel regarding significant developments, and participated directly in the mediation session. *See* Lead Plaintiffs Decl., attached hereto as Exhibit 2.

48. In addition, our firms, as Lead Counsel, have demonstrated that we are qualified and capable of prosecuting this Action, having prosecuted securities class actions (including mortgage-backed securities cases) for many years with proven track records of success, including within this District.[4]

49. Federal Rule of Civil Procedure 23(b)(3) is also satisfied. Plaintiffs' claims, including the elements of falsity, materiality, and damages, as well as Defendants' affirmative defenses, are all susceptible to common evidence and proof, such as through internal Bear Stearns documents, former employees of Bear Stearns, and a common set of third parties who were involved in the transactions and securitizations. Because Plaintiffs can demonstrate Defendants' liability using generalized proof on a class-wide basis, and because these core issues outweigh any hypothetical individual ones, Rule 23(b)(3)'s predominance requirement is satisfied.

50. The Rule 23(b)(3) "superiority" factors also weigh heavily in favor of certification. Certification will not prejudice the Class Members' interests in controlling individual actions because requiring multiple actions would be costly and inefficient and could significantly reduce the prospects for recovery. To the extent that there are individual investors that possess the resources or economic incentives to fund individual actions, many of those individuals have already filed claims, which are addressed in the Class definition. *See*

---

[4] *See Merrill Lynch*, 277 F.R.D. at 110 ("[i]t is also beyond serious dispute that class counsel – Bernstein Litowitz Berger & Grossmann LLP – is qualified and capable of prosecuting this action."); *Goldman Sachs*, 280 F.R.D. at 135-36; *Morgan Stanley,* 09-cv-2137 (KBF) (S.D.N.Y.).

Stipulation ¶1(j). The remaining investors who are Members of the Class are those who are most likely to benefit from the collective resolution of a class action.

### C.    The Proposed Notice Meets The Requirements Of Due Process And Rule 23 Of The Federal Rules Of Civil Procedure

51.    If the Court grants preliminary approval, within 10 business days of entry of the Preliminary Approval Order, the Claims Administrator will mail the Notice and Proof of Claim Form (Exhibits A-1 and A-2 to the Stipulation) to Class Members who can be identified with reasonable effort. Specifically, the Claims Administrator will utilize several resources of data to reasonably identify Class Members, including: (i) any lists that Defendants have that identify potential Class Members, as required by Paragraph 12 of the Stipulation; (ii) a list of subpoena recipients that Lead Plaintiffs served in this case as potentially maintaining Class Member contact information; (iii) contact information obtained through searches of the documents and information that Lead Plaintiffs received in this case, as described above; and (iv) a proprietary list maintained by the Claims Administrator of thousands of the largest and most common U.S. banks, brokerage firms, and nominees, as well as the Depository Trust Company, which acts as a clearinghouse to process and settle trades in securities. The Notice requires nominees, within 7 calendar days, to either (i) send copies of the Notice and the Claim Form to the beneficial owner of such Certificates, or (ii) provide to the Claims Administrator the names and addresses of such persons.

52.    In addition, a Summary Notice will be published in the national edition of *Investor's Business Daily, The Wall Street Journal,* and over the *PR Newswire*. Information regarding the Settlement, including downloadable copies of the Notice and Claim Form, will be posted on the website established by the Claims Administrator specifically for this Settlement, www.BearStearnsCertificateSettlement.com, as well as on Lead Counsel's websites. This

method of giving notice, successfully used in other RMBS class actions, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1).

53.     The Notice will advise Class Members of the essential terms of the Settlement, set forth the procedure for objecting to or opting out of the Settlement, and provide specifics on the date, time and place of the Final Approval Hearing. The Notice also contains information regarding Lead Counsel's fee application and the proposed plan of allocating the Settlement proceeds among Class Members. The Notice will fairly apprise Class Members of their rights with respect to the Settlement and therefore is the best notice practicable under the circumstances and complies with Federal Rule of Civil Procedure 23, the PSLRA, and due process.

We declare under penalty of perjury that the foregoing facts are true and correct and that this declaration was executed this 13th day of February, 2015.


   */s/ David R. Stickney*                                          */s/ Daniel S. Sommers*

         David R. Stickney                                         Daniel S. Sommers