UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE BEAR STEARNS MORTGAGE
PASS-THROUGH CERTIFICATES
LITIGATION

Case No. 1:08-cv-08093-LTS

Courtroom:   12D

Judge:        Hon. Laura Taylor Swain

**MEMORANDUM OF LAW IN SUPPORT OF
LEAD COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................. ii

I.   INTRODUCTION ....................................................................................1

II.  ARGUMENT ...........................................................................................4

    A.   Lead Counsel Are Entitled To An Award Of Attorneys' Fees
       From The Common Fund.................................................................4

    B.   The Court Should Award A Reasonable Percentage Of The
       Common Fund ...................................................................................5

    C.   The Requested Attorneys' Fees Are Reasonable Under The
       Percentage-of-the-Fund Method .......................................................7

    D.   A Review Of The *Goldberger* Factors Confirms That The
       Requested 16.25% Fee Is Fair And Reasonable .............................11

       1.   The Time And Labor Expended By Plaintiffs'
          Counsel Support The Requested Fee ...................................11

       2.   The Magnitude And Complexity Of The Action
          Support The Requested Fee ..................................................13

       3.   The Risks Of The Litigation Support The Requested
          Fee.......................................................................................14

       4.   The Quality Of Lead Counsel's Representation
          Supports The Requested Fee................................................16

       5.   Second Circuit Precedent Supports The 16.25% Fee
          As A Reasonable Percentage Of The Total Recovery ..............18

       6.   Public Policy Considerations Support The Requested
          Fee.......................................................................................18

       7.   Lead Plaintiffs' Approval And The Class' Reaction
          Support The Requested Fee ..................................................18

    E.   A Lodestar Cross-Check Confirms The Reasonableness Of The
       Fee Request .....................................................................................20

    F.   Plaintiffs' Counsel's Litigation Costs Are Reasonable And
       Should Be Approved For Recovery .................................................22

    G.   Lead Plaintiff MissPERS Should Be Awarded Its Reasonable
       Costs And Expenses Under 15 U.S.C. § 77z-1(a)(4)......................23

III. CONCLUSION.......................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
No. 03 MDL 1529 LMM, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*,
272 Fed. Appx. 9 (2d Cir. 2008) ........................................................................10, 17

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
No. 04 Civ. 8141 (DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) ......................................24

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002) ........................................................................10, 21

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) ........................................................................6

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
772 F.3d 125 (2d Cir. 2014) ........................................................................ passim

*In re BankAmerica Corp. Sec. Litig.*,
228 F. Supp. 2d 1061 (E.D. Mo. 2002) ........................................................................9

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ........................................................................5

*In re Bisys Sec. Litig.*,
No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ......................................20

*Blum v. Stenson*,
465 U.S. 886 (1984) ........................................................................6, 7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ........................................................................4

*In re Bristol-Myers Squibb Sec. Litig.*,
No. 00-1990 (SRC), 2007 WL 2153284 (3d Cir. July 27, 2007) ......................................9

*In re Buspirone Antitrust Litig.*,
MDL No. 1413 (JGK), 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11,
2003) ........................................................................10

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ........................................................................7

*In re Cardinal Health Inc. Sec. Litig.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) ........................................................................9, 20

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........................................................9

*In re China Sunergy Sec. Litig.*,
   No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)......................................22

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)..................................................................15

*In re CMS Energy Sec. Litig.*,
   No. 02 CV 72004 (GCS), 2007 U.S. Dist. LEXIS 96786 (E.D. Mich. Sept. 6,
   2007) ........................................................................................9

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ................. passim

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011).........................................................6, 20

*In re Deutsche Telekom AG Sec. Litig.*,
   No. 00-CV-9475 (NRB), 2005 U.S. Dist. LEXIS 45798 (S.D.N.Y. June 9,
   2005) ......................................................................................10, 21

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).......................... passim

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ..............................................................4

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................10, 17

*In re Global Crossing Sec. Litig.*,
   No. 02 Civ. 910 (GEL), 2005 WL 1668532 (S.D.N.Y. July 12, 2005).......................10

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000).............................................................. passim

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) ................................................................7

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ................................................................7

*Hayes v. Harmony Gold Mining Co. Ltd.*,
   509 Fed. Appx. 21 (2d Cir. 2013) (unpubl.) ..................................................5

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...........................5, 18, 23

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)...........................................................................................10

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964)........................................................................................................................5

*Kurzweil v. Philip Morris Cos.*,
No. 94 Civ. 2373 (MBM), 1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999)...................................10

*In re Linerboard Antitrust Litig.*,
MDL No. 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .........................................................9

*In re Lucent Techs., Inc. Sec. Litig.*,
327 F. Supp. 2d 426 (D.N.J. 2004)...........................................................................................9, 19

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................................7, 18, 21

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ..........................................................................................16, 17

*In re The Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ....................................................................................................9

*Missouri v. Jenkins*,
491 U.S. 274 (1989).................................................................................................................7, 21

*In re Monster Worldwide, Inc. Sec. Litig.*,
No. 07-cv-02237-JSR, 2008 WL 9019514 (S.D.N.Y. Nov. 25, 2008).........................................24

*Ohio Pub. Emps. Ret. Sys. v. Freddie Mac*,
No. 03-CV-4261 (JES), 2006 U.S. Dist. LEXIS 98380 (S.D.N.Y. Oct. 26,
2006) ............................................................................................................................................10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
MDL No. 1222 (CLB), 2003 U.S. Dist. LEXIS 26795 (S.D.N.Y. June 12,
2003) ............................................................................................................................................10

*Parker v. Time Warner Entm't Co.*,
631 F. Supp. 2d 242 (E.D.N.Y. 2009) .........................................................................................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................................................. passim

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ...................................................................................7

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) .........................................................................................7

*In re Rite Aid Corp. Sec. Litig.*,
  362 F. Supp. 2d 587 (E.D. Pa. 2005) ........................................................................9

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................................9, 22

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999).......................................................................................6

*In re Schering-Plough Corp. Sec. Litig.*,
  No. 01-CV-0829 (KSH/MF), 2009 WL 5218066 (D.N.J. Dec. 31, 2009) ...................9

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) (*en banc*) .......................................................................9

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ...............................................................................13

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993).....................................................................................7

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004).....................17

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008*)*.........................................................4, 7, 14, 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)....................................................................................................5

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire*
  *Litig.*,
  56 F.3d 295 (1st Cir. 1995).........................................................................................6

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ......................................................................................7

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989)............................................................................21

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ..................... passim

*In re Vitamins Antitrust Litig.*,
    No. 99-197 (TFH), 2001 WL 34312839 (D.D.C. July 16, 2001) ....................................................9

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...............................................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).............................................................................................5, 6, 20

*In re Waste Mgmt., Inc. Sec. Litig.*,
    No. 97 C 7709, 1999 WL 967012 (N.D. Ill. Oct. 18, 1999) .......................................................10

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005).....................................................................................7

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) .....................................................................................24

### STATUTES, RULES AND OTHER AUTHORITIES

15 U.S.C. § 77z-1 ....................................................................................................... 7, 23

H.R. Conf. Rep. No. 104-369, (1995),
    reprinted in 1995 U.S.C.C.A.N. 730 .....................................................................................19

## I.   __INTRODUCTION__

Court-appointed Co-Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein," collectively, "Lead Counsel" or "Co-Lead Counsel"), having recovered a $500 million Settlement Fund and an additional $5 million Cost Fund for the benefit of the Class, respectfully apply for an award of attorneys' fees in the amount of 16.25% of the Settlement Amount, plus interest.[1]  Lead Counsel also seek $1,381,611.60 in Litigation Costs that Plaintiffs' Counsel reasonably and necessarily incurred to prosecute the Action, as well as $30,325.00 as reimbursement for Lead Plaintiff MissPERS' costs and expenses.[2]  The Stipulation provides that any Court-awarded attorneys' fees and reimbursement of expenses of Lead Plaintiffs will be paid out of the $500 million Settlement Fund; Court-awarded litigation expenses of Plaintiffs' Counsel, as well as Notice and Administration Expenses, will be paid out of the additional $5 million Cost Fund.

From the outset of this case, Lead Counsel faced issues of first impression and complex factual and legal questions surrounding class litigation related to mortgage-backed securities ("MBS").  When the case began in August 2008, there was no established precedent for successfully asserting class-wide claims for violations of the Securities Act arising from the sale of MBS.  No court had yet sustained such claims, accepted Plaintiffs' theory of damages or

---

[1]  Lead Counsel respectfully refer the Court to the accompanying Joint Declaration of David R. Stickney and Daniel S. Sommers in Support of Motion for Final Approval of Settlement and Plan of Allocation, and Motion for Approval of Attorneys' Fees and Expenses ("Lead Counsel Decl.") for a detailed description of the case and the Settlement.  Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated February 2, 2015 (ECF No. 264) and in the Lead Counsel Declaration.

[2]  "Plaintiffs' Counsel" include the Court-appointed Co-Lead Counsel for the Class, Bernstein Litowitz and Cohen Milstein, and additional counsel for Lead Plaintiff MissPERS, Pond Gadow & Tyler ("Pond Gadow"); and Kohn, Swift & Graf, P.C., ("Kohn Swift") counsel for Plaintiff Police and Fire Retirement System of the City of Detroit ("Detroit P&F").

certified a class in such litigation.  Lead Counsel nevertheless undertook this representation on a contingency basis, with no guarantee of success or recovery.  They faced substantial risks establishing liability, defeating affirmative defenses, proving damages, and establishing that a class action was appropriate for litigation purposes.  Indeed, a number of other putative MBS class actions had been dismissed or materially narrowed.

As detailed in the accompanying Lead Counsel Declaration, Lead Counsel vigorously pursued this litigation for more than six years after the filing of the first complaint in August 2008.  Among other things, Lead Counsel conducted a thorough investigation in order to prepare and file detailed complaints, including finding and interviewing witnesses and analyzing offering documents, SEC filings, press releases, court filings from other cases involving the originators of the underlying loans, media reports and congressional testimony.  Lead Counsel also opposed two rounds of dispositive motions, ultimately overcoming Defendants' motions to dismiss; developed a compelling record, including through their in-depth investigation and obtaining and analyzing over 15 million pages of documents and 55 million additional pages of loan files; engaged and consulted with experts in areas requiring specialized knowledge; researched the law applicable to the claims and potential defenses; and successfully negotiated a favorable settlement.  *See* Lead Counsel Decl. ¶¶12-78.

Given the substantial recovery obtained for the Class, the complexity and amount of work involved, the skill and expertise required, and the significant risks that counsel undertook, the requested award of 16.25% of the Settlement Amount is fair and reasonable.  Federal courts in this District and throughout the nation have awarded the same or substantially greater percentage fees in other similarly complex class litigation, including other MBS actions.  A lodestar cross-check confirms that the requested fee, which represents a multiplier of approximately 1.5, is fair

and reasonable.  Moreover, the Lead Plaintiffs have reviewed and endorsed the fairness and reasonableness of the requested fee.[3]

In addition, as required by the Court's February 19, 2015 Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order," ECF No. 268), copies of the Notice have been mailed to more than 7,500 potential Class Members and their nominees. In addition, a Summary Notice was published in *Investor's Business Daily*, in the *Wall Street Journal* and over the PR Newswire, and Settlements are available on the website created specifically for this Settlement.  *See* Declaration of Jennifer M. Keough Re Notice Dissemination and Publication, attached to Lead Counsel Decl. as Exhibit 2 ("Keough Decl."), ¶¶2-13.  The Notice advised potential Class Members that Lead Counsel would seek attorneys' fees in an amount not to exceed 17% of the Settlement Amount, plus interest earned at the same rate and for the same period as earned by the Settlement Fund.  The Notice further advised potential Class Members that Lead Counsel would apply for the reimbursement of expenses paid or incurred by Plaintiffs' Counsel in connection with the prosecution and resolution of the Action in an amount not to exceed $3 million, and for reimbursement of the costs and expenses of Plaintiffs (including lost wages) in accordance with the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  *See* Keough Decl. Ex. A, ¶¶5, 55.

---

[3] *See* Declaration of George W. Neville, Special Assistant Attorney General, Legal Counsel to Lead Plaintiff the Public Employees' Retirement System of Mississippi, in Support of (A) Plaintiffs' Motion for Approval of Settlement and Plan of Allocation; (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses; and (C) Lead Plaintiff's Request for Reimbursement of Costs and Expenses ("Neville Decl."), attached to Lead Counsel Decl. as Exhibit 1-A, ¶9; Declaration of George R. Laufenberg, Fund Administrator of Lead Plaintiff the New Jersey Carpenters Health Fund in Support of (A) Plaintiffs' Motion for Approval of Settlement and Plan of Allocation; and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Laufenberg Decl."), attached hereto to Lead Counsel Decl. as Exhibit 1-B, ¶8.

While the deadline for Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no one has objected to Lead Counsel's application for fees and expenses.[4]  In addition, both the actual fee request now (16.25%), and the actual expense request now (less than $1.4 million) are lower than the maximum amounts stated in the Notice.

For the reasons set forth below, Lead Counsel respectfully request that the Court approve their application for attorneys' fees and expenses.

## II.   ARGUMENT

### A.   Lead Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  Courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore to discourage future alleged misconduct of a similar nature.[5]  Indeed, the Supreme Court has emphasized that private securities actions, such as this one, are "an essential

---

[4] The deadline for the receipt and filing of objections is May 6, 2015.  Should any objections be received, Lead Counsel will address them in reply papers to be filed on or before May 13, 2015.

[5] *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008*); see In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007) (same); *see also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (an award of appropriate attorneys' fees should "provid[e] lawyers with sufficient incentive to bring common fund cases that serve the public interest" and "attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so") (citations omitted).

supplement to criminal prosecutions and civil enforcement actions" brought by the SEC.[6] Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

**B.      The Court Should Award A Reasonable
Percentage Of The Common Fund**

Most courts find that the percentage-of-the-fund method, under which counsel is awarded a percentage of the fund that they recovered, is the preferred means to determine a fee because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."[7]  The percentage approach also recognizes that the quality of counsel's services is measured best by the results achieved and is most consistent with the system typically used in the marketplace to compensate

---

[6] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'") (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

[7] *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Hayes v. Harmony Gold Mining Co. Ltd.*, 509 Fed. Appx. 21, 24 (2d Cir. 2013) (unpubl.) ("[A]s the district court recognized, the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class.").  Courts have also historically used the lodestar method for awarding plaintiffs' counsel attorneys' fees, where counsel are awarded the product of their number of hours, multiplied by their reasonable rate, and enhanced by a "multiplier."  Specifically, under the lodestar method, a court first multiplies the number of hours each attorney or paraprofessional spent on the case by each attorney's and paraprofessional's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorney's work.  A lodestar cross-check on the requested percentage-of-the-fund fee request is addressed below in Section II.E.

attorneys in non-class contingency cases.[8]  The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund.  *See Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class").

The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources."[9]  The Second Circuit also acknowledges that the "trend in this Circuit is toward the percentage method."[10]  All federal Courts of Appeal to consider the matter have approved of the percentage method, with two circuits ***requiring*** its use in common-fund cases.[11]

---

[8] *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work.  The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel . . . .") (citation omitted); *Davis v. J.P. Morgan Chase & Co.,* 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (the "advantages of the percentage method . . . are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by individual clients to compensate their attorneys").

[9] *Goldberger*, 209 F.3d at 48-50 (holding that either the percentage-of-the-fund method or lodestar method may be used to determine appropriate attorneys' fees); *see also In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.* ("*BofA*"), 772 F.3d 125, 134 (2d Cir. 2014) (affirming award, over objections, of attorneys' fees equaling over 6% of $2.425 billion settlement fund); *Savoie v. Merchs. Bank,* 166 F.3d 456, 460 (2d Cir. 1999) (the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases.").

[10] *Wal-Mart*, 396 F.3d at 121; *see also Davis*, 827 F. Supp. 2d at 183-85; *Payment Card Interchange Fee,* 991 F. Supp. 2d at 440 ("The trend in this Circuit, and the method I adopt here, is a percentage of the fund."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010); *In re Am. Int'l Grp, Inc. 2008 Sec. Litig.,* 08-cv-4772-LTS-DCF (S.D.N.Y.), Order filed March 20, 2015 (ECF No. 517).

[11] *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305-07 (1st Cir. 1995); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir.

The PSLRA also supports use of the percentage-of-the-fund method, as it provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a *reasonable percentage* of the amount" recovered for the class. 15 U.S.C. § 77z-1(a)(6) (emphasis added). Several courts have concluded that Congress, in using this language, expressed a preference for the percentage method when determining attorneys' fees in securities class actions.[12]

### C.    The Requested Attorneys' Fees Are Reasonable Under The Percentage-of-the-Fund Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery.[13] Moreover, at 16.25%, the requested fee is less than the percentage fee awards granted in other class actions arising out of the purchase of MBS, including several recently within the Second Circuit:

---

2006); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). The Eleventh and District of Columbia Circuits have required the use of the percentage method in common-fund cases. *See Camden*, 946 F.2d at 774; *Swedish Hosp.*, 1 F.3d at 1271.

[12] *See, e.g., Telik*, 576 F. Supp. 2d at 586; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002).

[13] *See Blum*, 465 U.S. at 903-04 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

| Case/Fee Order | % of the Fund | Settlement Amount |
|---|---|---|
| *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-00302 (MRP) ("*Countrywide*"), ECF No. 570 (C.D. Cal. Dec. 5, 2013), *appeal pending*, C.A. No. 14-55093 (9th Cir.) | 17% | $500 million |
| *MissPERS v. Merrill Lynch & Co. Inc.,* No. 08-cv-10841-JSR-JLC ("*Merrill Lynch*"), ECF No. 186 (S.D.N.Y. May 8, 2012) | 17% | $315 million |
| *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp.*, No. 08-cv-1713 (PKC) ("*J.P. Morgan*"), ECF No. 229 (E.D.N.Y. July 24, 2014) | 17% | $280 million |
| *N.J. Carpenters Vacation Fund v. The Royal Bank of Scot. Grp., PLC,* No. 08-CV-5093 (LAP) ("*RBS*"), ECF No. 286 (S.D.N.Y. Nov. 5, 2014) | 17% | $275 million |
| *In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-1376-LHK (PSG) ("*Wells Fargo*"), ECF No. 475 (N.D. Cal. Nov. 14, 2011) | 19.75% | $125 million |
| *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.,* No. 09-cv-2137 (KBF), ECF No. 336 (S.D.N.Y. Dec. 18, 2014) | 17% | $95 million |
| *Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt-A Sec., Inc.,* No. 08-cv-3178-LDW-ARL, ECF No. 147 (E.D.N.Y. July 11, 2012) | 26.5% | $32.5 million |
| *MissPERS v. Goldman Sachs Grp., Inc.,* No. 09-cv-1110-HB ("*Goldman Sachs*"), ECF No. 150 (S.D.N.Y. Nov. 8, 2012) | 17% | $26,612,500 |
| *In re: Wash. Mut. Mortg.-Backed Sec. Litig.,* No. C09-0037 (MJP), ECF No. 514 (W.D. Wash. Jan. 11, 2013) | 17% | $26 million |
| *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.,* No. 08-cv-1418, ECF No. 178 (E.D.N.Y. Dec. 5, 2012) | 20.42% | $24,975,000 |
| *Genesee Cnty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3,* No. 09-cv-300 (JB), ECF No. 272 (D.N.M. Feb. 25, 2013) | 21% | $11.25 million |
| *Tsereteli v. Residential Asset Securitization Trust 2006-A8,* No. 08-cv-10637 (LAK), ECF No. 123 (S.D.N.Y. Jan. 27, 2014) | 29% | $11 million |

Moreover, the Honorable John Gleeson recently reviewed the fee awards in class actions. *Payment Card Interchange Fee*, 991 F. Supp. 2d at 443. Based on Judge Gleeson's graduated

fee schedule, settlements of this magnitude ($500 million) would receive fees of approximately 21.56%.[14]

Indeed, the requested 16.25% is well within the range of percentage fees awarded within the Second Circuit in other comparable class actions asserting claims not arising from the purchase of MBS.[15]  As the below chart illustrates, many of these cases resulted in award percentages well in excess of the 16.25% fee requested here:

_____

[14] Judge Gleeson's research revealed that courts generally awarded 33% of the first $10 million, and gradually decreased the marginal percentage of recovery to 30%, 25%, and 20% of the settlement value up to $500 million. *Id.* at **6-7.  Applied here, the award would be 33% of the first $10 million; 30% of the next $40 million; 25% of the next $50 million, and 20% of the next $400 million, resulting in an award of $107.8 million, or approximately 21.56% of the $500 million settlement amount.

[15] A review of fee awards in other securities cases and other complex class actions from other jurisdictions, with larger settlement amounts, further confirms the reasonableness of the requested 16.25% award.  *See, e.g., Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 332-33 (3d Cir. 2011) (*en banc*) (affirming award of 25% of a $295 million settlement fund in an antitrust case); *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1359-60 (S.D. Fla. 2011) (awarding 30% of $410 million settlement fund, net of expenses); *In re Cardinal Health Inc. Sec. Litig.,* 528 F. Supp. 2d 752, 770-71 (S.D. Ohio 2007) (awarding 18% of $600 million settlement fund, net of expenses); *In re Williams Sec. Litig.,* No. 02-CV-72-SPF (FHM), ECF No. 1638 (N.D. Okla. Feb. 12, 2007) (awarding 25% of $311 million settlement fund, net of expenses); *In re Lucent Techs., Inc. Sec. Litig.,* 327 F. Supp. 2d 426, 442 (D.N.J. 2004) (awarding 17% of $517 million settlement fund); *In re Rite Aid Corp. Sec. Litig.,* 362 F. Supp. 2d 587, 590-91 (E.D. Pa. 2005) and 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) (awarding 25% of $319.6 million in combined settlement funds); *In re DaimlerChrysler AG Sec. Litig.,* No. 00-0993 (KAJ), ECF No. 973 (D. Del. Feb. 5, 2004) (awarding 22.5% of $300 million settlement fund, net of expenses); *In re BankAmerica Corp. Sec. Litig.,* 228 F. Supp. 2d 1061, 1070 (E.D. Mo. 2002) (awarding 18% of $490 million settlement fund, net of expenses); *In re Vitamins Antitrust Litig.,* No. 99-197 (TFH), 2001 WL 34312839, at **9-10 (D.D.C. July 16, 2001) (awarding 33.7% of $365 million common fund); *In re 3Com Corp. Sec. Litig.,* No. C-97-21083 (JW), ECF No. 167 (N.D. Cal. Mar. 9, 2001) (awarding 18% of $259 million settlement fund); *see also, e.g., In re The Mills Corp. Sec. Litig.,* 265 F.R.D. 246, 266 (E.D. Va. 2009) (awarding 18% of $202.75 million settlement fund); *In re Schering-Plough Corp. Sec. Litig.,* No. 01-CV-0829 (KSH/MF), 2009 WL 5218066, at **5-6 (D.N.J. Dec. 31, 2009) (awarding 23% of $165 million settlement fund); *In re CMS Energy Sec. Litig.,* No. 02 CV 72004 (GCS), 2007 U.S. Dist. LEXIS 96786, at **14-15 (E.D. Mich. Sept. 6, 2007) (awarding 22.5% of $200 million settlement fund); *In re Bristol-Myers Squibb Sec. Litig.,* No. 00-1990 (SRC), ECF No. 367 (D.N.J. May 11, 2006) (awarding 19.77% of $185 million settlement fund), *aff'd* 2007 WL 2153284 (3d Cir. July 27, 2007) (unpubl.); *In re Linerboard Antitrust Litig.,* MDL No. 1261, 2004 WL 1221350, at *5, *19

| Case/Fee Order | % of the Fund | Settlement Amount |
|---|---|---|
| *In re Am. Int'l Group, Inc. 2008 Sec. Litig.,* 08-cv-4772-LTS-DCF ("AIG"), ECF No. 517 (S.D.N.Y. Mar. 20, 2015) | 12% | $970.5 million |
| *In re Initial Pub. Offering Sec. Litig.,* 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) | 33-1/3% | $586 million |
| *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,* No. 03 MDL 1529 LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006), *aff'd,* 272 Fed. Appx. 9 (2d Cir. 2008) | 21.4% | $455 million |
| *Ohio Pub. Emps. Ret. Sys. v. Freddie Mac,* No. 03-CV-4261 (JES), 2006 U.S. Dist. LEXIS 98380, at *4 (S.D.N.Y. Oct. 26, 2006) | 20% | $410 million |
| *In re Oxford Health Plans, Inc. Sec. Litig.,* MDL No. 1222 (CLB), 2003 U.S. Dist. LEXIS 26795, at *13 (S.D.N.Y. June 12, 2003) | 28% | $300 million |
| *In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) | 25% | $225 million |
| *In re Buspirone Antitrust Litig.,* MDL No. 1413 (JGK), 2003 U.S. Dist. LEXIS 26538, at *11 (S.D.N.Y. Apr. 11, 2003) | 33-1/3% | $220 million |
| *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 464-68 (S.D.N.Y. 2004) | 18.7% | $205 million[16] |
| *In re Fannie Mae 2008 Sec. Litig.,* No. 08-cv-7831 (PAC) ("*Fannie Mae*"), ECF No. 552 (S.D.N.Y. Mar. 3, 2015) | 17.65% | $170 million |
| *Kurzweil v. Philip Morris Cos.,* No. 94 Civ. 2373 (MBM), 1999 WL 1076105, at *1 (S.D.N.Y. Nov. 30, 1999) | 30% | $123.8 million |
| *In re Deutsche Telekom AG Sec. Litig.,* No. 00-CV-9475 (NRB), 2005 U.S. Dist. LEXIS 45798, at **12-13 (S.D.N.Y. June 9, 2005) | 28% | $120 million |
| *Policemen's Annuity and Benefit Fund of Chicago v. Bank of Am., N.A.,* 12-cv-2865 (KBF), ECF No. 327 (S.D.N.Y. Mar. 16, 2015) | 18% | $69 million |

---

(E.D. Pa. June 2, 2004) (awarding 30% of $202.5 million settlement fund); *In re AremisSoft Corp. Sec. Litig.,* 210 F.R.D. 109, 130-35 (D.N.J. 2002) (awarding 28% of $194 million settlement fund); *In re Waste Mgmt., Inc. Sec. Litig.,* No. 97 C 7709, 1999 WL 967012, at *3 (N.D. Ill. Oct. 18, 1999) (awarding 20% of $220 million settlement fund).

[16] Subsequent settlements in the *Global Crossing* securities litigation brought the total settlement amount to an aggregate $408 million from which total fees of 17.8% were awarded. *See In re Global Crossing Sec. Litig.,* No. 02 Civ. 910 (GEL), 2005 WL 1668532, at *5 (S.D.N.Y. July 12, 2005); ECF No. 655 (Nov. 4, 2005); ECF No. 722 (Oct. 30, 2006); and ECF No. 773 (Oct. 1, 2007).

**D.    A Review Of The *Goldberger* Factors Confirms
        <u>That The Requested 16.25% Is Fair And Reasonable</u>**

The Second Circuit recently reiterated that the appropriate criteria to consider when

reviewing a request for attorneys' fees in a common-fund case include the "*Goldberger*" factors:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities
> of the litigation; (3) the risk of the litigation; (4) the quality of representation;
> (5) the requested fee in relation to the settlement; and (6) public policy
> considerations.

*Goldberger*, 209 F.3d at 50 (internal quotes and citation omitted), *cited in BofA,* 772 F.3d at 134

(affirming attorneys' fee award, over objection, that was "based upon an application of the

criteria set out in *Goldberger*").    Consideration of these factors demonstrates that the fee

requested by Lead Counsel is reasonable.

**1.    The Time And Labor Expended By
        <u>Plaintiffs' Counsel Support The Requested Fee</u>**

The work undertaken by Lead Counsel in prosecuting this complex securities class action

and arriving at this Settlement has been time-consuming and challenging. Over the past six years,

Lead Counsel dedicated an enormous amount of labor, time, and money to pursue and resolve

this case successfully. Lead Counsel's efforts included an extensive and thorough investigation

prior to filing the various complaints which included, among other things, carefully analyzing the

offering documents; reviewing such additional sources as court filings in related government,

private, and criminal investigations and litigation, SEC filings and reports, press releases, other

public statements, congressional testimony; and identifying, locating and interviewing percipient

witnesses, 14 of which are referenced in the Third Complaint.   Lead Counsel also opposed two

rounds of motions to dismiss, which required extensive briefing and numerous supplemental

submissions, and subsequent motions for reconsideration and to amend.   Each of these motions

raised myriad complex and novel legal issues.  Lead Counsel Decl. ¶¶12-71.

Lead Counsel undertook to create a compelling record addressing the complicated factual and legal issues in the case.  Such efforts included extracting helpful evidence from information in the public domain during the course of the litigation.  *Id.* at ¶¶62-63.  Lead Counsel sought and obtained the Court's permission to serve document-preservation subpoenas on approximately 65 third parties, including originators, clearing banks, rating agencies, trustees, servicers, and due-diligence firms.  Lead Counsel Decl. ¶60.  Lead Counsel also sought and obtained key documents from Defendants, totaling over 15 million pages of documents and 55 million additional pages of loan files.  The documents came in a wide variety of formats and styles.  The effective review of documents required Lead Counsel to analyze not only typical images of documents, and prior deposition testimony from 60 percipient witnesses (including four Individual Defendants), but also to analyze spreadsheets, databases, and other complex compilations of financial data.  Lead Counsel used a sophisticated electronic system to perform the necessary review and analysis, and retained a consulting expert to re-underwrite sample loans.  Lead Counsel also consulted with experts on issues such as negative causation, materiality, damages, mortgage-loan underwriting, and statistics.  Lead Counsel Decl. ¶¶64-70.

Lead Counsel devoted substantial resources towards assembling a team of attorneys to develop and analyze a record within five months that otherwise may have required more than a year of discovery.  Lead Counsel analyzed internal Bear Stearns documents in a compressed period of time for use in mediation statements and during negotiations.  Lead Counsel organized the evidence both by subject matter and across securitizations.  In order for the attorneys engaged in the review to effectively understand the significance of any documents and other information produced, they were trained by, supervised by and regularly and closely interacted with the more senior attorneys who had been working on the case, and other MBS cases, for years.  There were

regular and periodic meetings among the firm attorneys during which the most important documents, testimony and other significant case issues were discussed.  This required the attorneys working on the case to utilize their legal experience, judgment and training to fully understand the documents and determine their significance and how they impacted the legal theories and affirmative defenses at issue in the case.  Lead Counsel Decl. ¶¶112-116.

Lead Counsel devoted substantial time and resources to prosecute this Action in an environment where the law governing key aspects of the case continued to evolve. As reflected in the lengthy and complicated procedural history (*see* Lead Counsel Decl. ¶¶12-71), issues surrounding standing and the statute of repose were unsettled at the outset of the case.  Such issues were the subject of repeated motion practice throughout the litigation and placed counsel and the Class at substantial risk as to the scope and potential success of the litigation.  *Id.* ¶¶79-91.

In total, as set forth in the respective declarations, Plaintiffs' Counsel expended 138,804.45 hours prosecuting this Action.  Exs. 4-A, 4-B, 4-C, 4-D.  The significant amount of time and effort devoted to this case by Plaintiffs' Counsel confirms that the fee requested here is reasonable.

### 2.    The Magnitude And Complexity Of The Action Support The Requested Fee

Courts have long recognized that securities class actions are "notably difficult and notoriously uncertain."  *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550, at \*27 (S.D.N.Y. Nov. 8, 2010) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)).  This case was no exception.  It raised many novel and complex factual and legal issues surrounding structured securities and the nationwide economic downturn.  Lead Counsel undertook to create a compelling record that addressed such issues.

As discussed in the Lead Counsel Declaration, the case involved 22 offerings constructed from over 64,000 underlying mortgage loans sourced from nearly 500 originators.  Lead Counsel ¶121.  The process of originating the loans, securitizing them, structuring the offerings, creating offering documents and selling the loans is complex.  Moreover, complicated and rapidly evolving legal issues pervaded.  Many of the arguments raised in Defendants' motions to dismiss, the substantial supplemental briefing, and motions for reconsideration and to amend raised these issues, including related to standing, cognizable damages, the statute of limitations and statute of repose, and others.

The litigation also raised a number of complex questions that required substantial efforts by Lead Counsel, often through analysis of the factual record and consultation with experts. Lead Counsel's consultation with experts was necessarily extensive given the complex nature of the subject matter underlying the Class' claims and the structured nature of the securities.  Lead Counsel consulted with experts to prepare the mediation brief, analyze estimated damages, review Defendants' affirmative defenses, and prepare for negotiations.  Lead Counsel ¶122. Accordingly, the magnitude and complexity of this Action support the conclusion that the requested fee is fair and reasonable.

### 3. The Risks Of The Litigation Support The Requested Fee

The risk of the litigation is often considered the most important *Goldberger* factor.  *See Goldberger*, 209 F.3d at 54; *Comverse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d at 592. The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted), *abrogated on other grounds by Goldberger*, 209 F.3d 43 (2d Cir. 2000).   When considering the reasonableness of attorneys' fees in a contingency action, the Court should consider the risks of the litigation at the time the suit was brought.  *See Goldberger*, 209 F.3d at 55; *Parker v. Time Warner Entm't Co.,* 631 F. Supp. 2d 242, 276 (E.D.N.Y. 2009) (noting that courts should consider "the contingent nature of the expected compensation" and the "risk of non-payment viewed as of the time of the filing of the suit").  The Court should bear in mind that "[l]ittle about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."  *Comverse*, 2010 WL 2653354, at *5.

While Lead Counsel believe that the claims of Plaintiffs and the Class have merit, they recognize that this case presented substantial risks and uncertainties from the outset, which made it far from certain that any recovery, let alone a substantial recovery of $500 million in cash, would ultimately be obtained for the Class.  As discussed in the Lead Counsel Declaration and in the memorandum of law in support of the Settlement, there were substantial risks here with respect to the ability to sustain the Action and prove that Defendants had made material misstatements or omissions and to establish that the alleged misstatements, rather than other factors (such as the overall economic downturn or housing price declines), were the cause of the Class' losses.  Lead Counsel Decl. ¶87.  If Defendants were to prevail, the Class – and therefore counsel – would receive nothing.

These risks were enhanced in this Action because many of the legal and factual issues were issues of first impression when the case began, or for which there was no controlling authority in the context of MBS litigation.  *Id*. ¶¶88, 125.  As demonstrated by the briefing and orders in this case, jurisprudence on many issues evolved during this litigation.  In connection

with the motions to dismiss, alone, the parties submitted nine letter briefs related to myriad issues, including whether:  (i) Plaintiffs' claims were timely under the statute of limitations and statute of repose; (ii) Plaintiffs had sufficiently pled false underwriting and appraisal statements in the Offering Documents; (iii) Plaintiffs' sole remedy was the substitution of loans; (iv) Plaintiffs' claims related back to the filing of prior complaints; (v) the Certificates' diminution in value constituted "cognizable loss" for purposes of damages under Section 11; and (vi) Plaintiffs had standing to represent all investors in each Offering, or only those who purchased the same "tranche" that the Plaintiffs purchased.  Lead Counsel Decl. ¶¶24-50.

Accordingly, the risks faced by Lead Counsel from the outset of the Action were very real.  In the face of these uncertainties, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require them to devote substantial attorney time and a significant expenditure of Litigation Costs with no guarantee of compensation.  Lead Counsel Decl. ¶111.  "There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise."  *Veeco*, 2007 WL 4115808, at *6.  Plaintiffs' Counsel's assumption of this contingency-fee risk strongly supports the reasonableness of the requested fee.[17]

### 4.    The Quality Of Lead Counsel's Representation Supports The Requested Fee

The quality of the representation is another important factor that supports the reasonableness of the requested fee.  The quality of the representation here is best evidenced by the quality of the result achieved.  *See Goldberger*, 209 F.3d at 55; *Veeco*, 2007 WL 4115808, at

---

[17] *See FLAG Telecom*, 2010 WL 4537550, at *27 ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

*7; *Global Crossing*, 225 F.R.D. at 467.  The quality of Lead Counsel's efforts in the litigation to date, together with their substantial experience in securities class actions and their commitment to the litigation, provided Lead Counsel with the leverage necessary to negotiate the significant settlement of $500 million, plus payment of litigation and claims administration expenses up to $5 million.

The skill and substantial experience of counsel in the specialized field of shareholder securities litigation also support the reasonableness of the requested fee.  *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,* No. 01-CV-11814 (MP), 2004 WL 1087261, at *6 (S.D.N.Y. May 14, 2004).  Lead Counsel specialize in complex securities litigation, including litigation involving MBS, and are highly experienced in such litigation, with a successful track record in securities cases throughout the country.  *See* Lead Counsel Decl. ¶79 and Lead Counsel's firm biographies attached thereto as Exs. 4-A5 and 4-B4.

Finally, courts repeatedly recognize that the quality of the opposition faced by plaintiffs' counsel should also be taken into consideration in assessing the quality of counsel's performance.[18]  Here, Defendants were represented by Greenberg Traurig, LLP, Sullivan & Cromwell LLP, Bingham McCutchen LLP, Morrison & Foerster LLP, and Kramer Levin Naftalis & Frankel LLP, who spared no effort in the defense of their clients.  Lead Counsel Decl. ¶131.  In the face of this formidable opposition, Lead Counsel were nonetheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that are favorable to

---

[18] *See, e.g., Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement"); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *Adelphia*, 2006 WL 3378705, at *3 ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work").

the Class.

### 5. Second Circuit Precedent Supports The 16.25% Fee As A Reasonable Percentage Of The Total Recovery

Courts have interpreted the next factor – the requested fee in relation to the settlement – as requiring the review of the fee requested in terms of the percentage it represents of the total recovery.  "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'"  *Comverse*, 2010 WL 2653354, at *3.  As discussed above, the requested 16.25% fee is well within the range of percentage fees that courts in the Second Circuit and around the country have awarded in comparable cases, and in other MBS class actions in particular.  Accordingly, it is reasonable in relation to the size of the Settlement.

### 6. Public Policy Considerations Support The Requested Fee

Public policy strongly favors rewarding firms for bringing successful securities actions like this one.  *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."). Accordingly, public policy favors granting Lead Counsel's fee and expense application here.

### 7. Lead Plaintiffs' Approval And The Class' Reaction Support The Requested Fee

Lead Plaintiffs were actively involved in the prosecution and settlement of this Action, and have approved the requested fee.  *See* Neville Decl. ¶¶5-9; Laufenberg Decl. ¶¶4-8, attached

as Exs. 1-A and 1-B to Lead Counsel Decl.   Lead Plaintiffs are precisely the type of sophisticated and financially interested investors that Congress envisioned serving as fiduciaries for the class when it enacted the PSLRA.   The PSLRA was intended to encourage institutional investors to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at *32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731.  Congress believed that these institutions would be in the best position to monitor the prosecution and to assess the reasonableness of counsel's fee requests.   Accordingly, Lead Plaintiffs' endorsement of the fee request supports its approval as fair and reasonable.[19]

The reaction of the Class also supports the requested fee.   As of April 16, 2015, the Claims Administrator has sent the Notice to over 7,500 potential Class Members and their nominees (Keough Decl. ¶10), informing them that, among other things, Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 17% of the Settlement Amount, plus interest earned at the same rate and for the same period as earned by the Settlement Fund.  Keough Decl. Ex. A, ¶¶5, 55.  While the time to object to the fee application does not expire until May 6, 2015, to date, not a single objection has been received.   Lead Counsel Decl. ¶132.   Notably, the actual request now of 16.25% is *less* than the maximum amount stated in the Notice.  Should any objections be received, Lead Counsel will address them

---

[19] *See, e.g., Veeco*, 2007 WL 4115808, at *8 ("public policy considerations support the award in this case because the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request"); *Lucent*, 327 F. Supp. 2d at 442 ("[s]ignificantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request") (approving fee of 17% of $517 million recovery).

in their reply papers.  Further, many, if not most, investors in MBS securities are sophisticated institutions, funds and pension plans.  Accordingly, the lack of objection from such sophisticated Class Members is a fact that strongly demonstrates Class Members' approval of the Settlement.

### E.    A Lodestar Cross-Check Confirms The Reasonableness Of The Fee Request

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to cross-check the proposed award against counsel's lodestar.  *See Goldberger*, 209 F.3d at 50; *Payment Card Interchange Fee*, 991 F. Supp. 2d at 447-48.  In cases like this, fees representing multiples of the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors.  *See, e.g.*, *FLAG Telecom*, 2010 WL 4537550, at *26 ("Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *Comverse*, 2010 WL 2653354, at *5 ("Where … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar."); *Cardinal Health*, 528 F. Supp. 2d at 761 ("[T]he Court rewards [] lead counsel that takes on more risk, demonstrates superior quality, or achieves a greater settlement with a larger lodestar multiplier").

Accordingly, in complex contingent litigation, lodestar multipliers between 2 and 5 are commonly awarded.[20]  Here, a lodestar cross-check fully supports the requested percentage fee.

---

[20] *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Payment Card Interchange Fee*, 991 F. Supp. 2d at 447-48 (awarding fee representing a multiplier of 3.41, which was "comparable to multipliers in other large, complex cases"); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758 (VM), ECF No. 117 (S.D.N.Y. July 18, 2011) (awarding fee representing a multiplier of 4.7); *Comverse*, 2010 WL 2653354, at *5 (awarding fee representing a 2.78 multiplier); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re Bisys*

In this entirely contingent action that raised myriad complex and novel issues, Lead Counsel and additional Plaintiffs' Counsel collectively devoted over 138,804.45 hours of attorney and other professional support time in the prosecution and investigation of the Action.[21] Plaintiffs' Counsel's total lodestar, derived by multiplying the hours spent by each attorney and paraprofessional by their current hourly rates, is $52,319,720.50.[22] The requested fee of 16.25% of the Settlement Amount will equal $81.25 million (plus interest), which represents a multiplier of approximately 1.5 on Plaintiffs' Counsel's lodestar amount. Thus, the 16.25% fee requested is well within the range awarded in cases of this type. The Second Circuit very recently affirmed

---

*Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (awarding 30% fee representing a 2.99 multiplier and finding that the multiplier "falls well within the parameters set in this district and elsewhere"); *Deutsche Telekom*, 2005 U.S. Dist. LEXIS 45798, at **13-14 (awarding fee representing a 3.96 multiplier); *AremisSoft*, 210 F.R.D. at 135 (a 4.3 multiplier was appropriate in light of the contingency risk and the quality of the result achieved); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

[21] As noted above, "Plaintiffs' Counsel" consist of the Court-appointed Co-Lead Counsel for the Class; additional counsel for Lead Plaintiff MissPERS, Pond Gadow; and Kohn Swift, counsel for Plaintiff Detroit P&F.

[22] Lead Counsel Decl. ¶118. As set forth in Lead Counsel's respective declarations, attached hereto as Exhibits 4-A and 4-B. The hourly rates are the same as, or comparable to, the rates submitted by Lead Counsel for lodestar cross-checks in other securities class action litigation for fee applications that have been granted within this Circuit. *See, e.g., Morgan Stanley, supra,* ECF No. 328 (Nov. 21, 2014); *J.P. Morgan, supra,* ECF No. 222-5 (June 19, 2014); *In re SMART Techs., Inc. S'holder Litig.*, No. 11-CV-7673 (KBF) (S.D.N.Y.) ECF No. 182-4 (July 8, 2013); *In re The Reserve Primary Fund Sec. & Derivative Class Action Litig.*, 08-cv-8060-PGG (S.D.N.Y.) ECF No. 101-4 (Nov. 11, 2013); *Goldman Sachs, supra,* ECF No. 147-2 (Oct. 4, 2012). Both the Supreme Court and courts in this Circuit have long approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment that is inherent in class actions, inflationary losses, and the loss of access to legal and monetary capital that could otherwise have been employed had class counsel been paid on a current basis during the pendency of the litigation. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Veeco*, 2007 WL 4115808, at *9; *Missouri,* 491 U.S. at 284.

a \$152.4 million attorneys' fee award resulting in a 1.73 multiplier.[23]

Lead Counsel's requested 16.25% fee is well within the range of what courts in this Circuit and throughout the country commonly award in complex class actions such as this one, including in other MBS class actions, when calculated as a percentage of the fund, and pursuant to a lodestar cross-check.

### F.   Plaintiffs' Counsel's Litigation Costs Are Reasonable And Should Be Approved For Recovery

Lead Counsel's fee application includes a request for Litigation Costs, to be paid from the Cost Fund, that were reasonably incurred in furtherance of the claims on behalf of the Class. These expenses are documented expenses properly recovered by counsel.[24]   As set forth in detail in the Plaintiffs' Counsel Declarations (Exs. 4-A, 4-B and 4-D), and summarized at Exs. 4 and 4-E, Lead Counsel request \$1,381,611.60 in expenses for prosecuting this Action for the benefit of the Class, to be paid out of the \$5 million Cost Fund that was obtained *in addition* to the \$500 million Settlement Fund.   The expenses are the types that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include expert fees,

---

[23] *BofA,* 772 F.3d at 134; *see Countrywide, supra* (awarding fees representing 2.11 multiplier); *RBS, supra* (awarding fees representing 2.27 multiplier); *Merrill Lynch, supra* (awarding fees representing 2.3 multiplier); *J.P. Morgan, supra* (awarding fees representing 1.83 multiplier); *Wells Fargo, supra* (awarding fees representing 2.82 multiplier); *see also AIG, supra* (awarding fees representing 1.5 multiplier).  Moreover, it should be emphasized that the lodestar "crosscheck" is exactly that – a rough crosscheck that is not intended to supplant the primacy of the percentage-based method.   If higher multipliers are not allowed in cases involving large dollar recoveries, then the lodestar approach "begins to dominate and supersede the percentage of the recovery formula," *Rite Aid*, 146 F. Supp. 2d at 736 n.44, eroding the many advantages of the percentage-of-the-fund method.

[24] *See, e.g.*, *In re China Sunergy Sec. Litig.,* No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'"); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

document-management/litigation support, computerized research, mediation costs, travel expenses, photocopying, long distance telephone charges, postage and delivery expenses, and filing fees. *See* Ex. 4-E, Schedule of Expenses by Category.

The Notice informed potential Class Members that Lead Counsel would apply for reimbursement of Plaintiffs' Counsel's Litigation Costs (and that an additional Cost Fund was included in the Settlement) in an amount not to exceed $3 million. Keough Decl. Ex. A ¶¶5, 55. The expenses actually requested, which total under $1.4 million, are less than half of that amount. To date, no Class Member has objected to the request for expenses. Lead Counsel Decl. ¶142.

### G. Lead Plaintiff MissPERS Should Be Awarded Its Reasonable Costs And Expenses Under 15 U.S.C. § 77z-1(a)(4)

Lead Counsel also seek approval for $30,325.00 in costs and expenses incurred by Lead Plaintiff MissPERS directly relating to its representation of the Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 77z-1(a)(4). Numerous courts have approved such awards under the PSLRA to compensate class representatives for the time and effort they spent on behalf of the class, and the Second Circuit recently affirmed the district court's award of costs to representative plaintiffs totaling over $453,000.[25]

---

[25] *BofA,* 772 F.3d at 133 (affirming district court's award of costs totaling over $453,000 to representative plaintiffs); *see Fannie Mae, supra* (awarding lead plaintiffs costs totaling approximately $114,000); *AIG, supra* (awarding lead plaintiff costs totaling over $80,000); *Hicks,* 2005 WL 2757792, at *10 ("Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place."); *SMART, supra* (awarding lead plaintiff costs totaling $15,000); *In re Direxion Shares ETF Trust,* No. 09-cv-

As set forth in the Neville Declaration (Exhibit 1-A to the Lead Counsel Declaration), Lead Plaintiff MissPERS took an active role in the prosecution of the Action, including communicating extensively with Lead Counsel regarding issues and developments in the Action, reviewing significant pleadings and briefs, conferring with Lead Counsel regarding the documents and other information that were obtained by Lead Counsel in connection with the settlement negotiations, attending the mediation, and consulting with Lead Counsel concerning the settlement negotiations as they progressed.[26]  Pursuant to the PSLRA, MissPERS requests $30,325.00 based on the value of the 155.5 hours that the Mississippi Office of the Attorney General employees expended participating in and managing this litigation on behalf of the Class. These are precisely the types of activities that courts have found to support awards to class representatives.[27]

The Notice sufficiently informed potential Class Members that such expenses would be sought.  *See BofA*, 772 F.3d at 132-33 (affirming district court's holding of sufficient notice,

---

8011-KBF, ECF No. 201 (S.D.N.Y. May 10, 2013) (awarding lead plaintiffs costs totaling $27,600); *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-cv-02237-JSR, 2008 WL 9019514, at *2 (S.D.N.Y. Nov. 25, 2008) (awarding class representative costs totaling $7,303.08); *see also Morgan Stanley, supra* (awarding lead plaintiff costs totaling $19,925.00); *J.P. Morgan, supra* (awarding lead plaintiff costs totaling $19,572.50); *Goldman Sachs*, *supra* (awarding lead plaintiff costs totaling $25,230); *Wells Fargo, supra* (awarding lead plaintiffs costs totaling $17,700).

[26] Neville Decl. ¶14.  Lead Plaintiff New Jersey Carpenters has elected not to request reimbursement for its costs and expenses.

[27] *See, e.g., In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to institutional lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"); *FLAG Telecom*, 2010 WL 4537550, at *31 (approving award of $100,000 to Lead Plaintiff for time spent on the litigation); *Veeco*, 2007 WL 4115808, at *12 (characterizing such awards as "routine" in this Circuit); *see also In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 collectively to lead plaintiffs who "fully discharged their PSLRA obligations and have been actively involved throughout the litigation [including] . . . communicat[ing] with counsel . . . [and] review[ing] counsels' submissions").

finding that comparable notice "unequivocally conveys the relevant information to the respective class members"). The request by Lead Plaintiff MissPERS is supported by a declaration including detailed accounting of the hours dedicated to the litigation and explanation that the hours constituted lost work time. The Second Circuit very recently confirmed that such time is compensable. *BofA*, 772 F.3d at 132-33 (affirming district court's award of over $453,000 in costs to representative plaintiffs). Lead Plaintiff MissPERS' request is reasonable and fully justified under the PSLRA and should be granted.

## III.    <u>CONCLUSION</u>

For all of these reasons, Lead Counsel respectfully request that the Court award them attorneys' fees of 16.25% of the Settlement Amount, plus interest earned at the same rate and for the same time period as the Settlement; $1,381,611.60 in Plaintiffs' Counsel's Litigation Costs; and $30,325.00 in Lead Plaintiff MissPERS' costs and expenses.

Dated:  April 22, 2015                           Respectfully submitted,
      San Diego, California

                                     BERNSTEIN LITOWITZ BERGER
                                       & GROSSMANN LLP

                                  By:    /s/ David R. Stickney

                                  David R. Stickney
                                  Niki L. Mendoza
                                  Richard D. Gluck
                                  Matthew P. Jubenville
                                  L. Reza Wrathall
                                  12481 High Bluff Drive, Suite 300
                                  San Diego, CA 92130
                                  Tel:    (858) 793-0070
                                  Fax:    (858) 793-0323
                                  davids@blbglaw.com
                                  nikim@blbglaw.com
                                  richard.gluck@blbglaw.com
                                  matthewj@blbglaw.com
                                  laurence.wrathall@blbglaw.com
                                  -and-

Max W. Berger
James A. Harrod
Katherine Stefanou
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:     (212) 554-1400
Fax:     (212) 554-1444
MWB@blbglaw.com
jim.harrod@blbglaw.com
katherine.stefanou@blbglaw.com


COHEN MILSTEIN SELLERS
    & TOLL PLLC

By:   /s/ Daniel S. Sommers

Daniel S. Sommers
S. Douglas Bunch
1100 New York Avenue, NW, Suite 500 East
Washington, D.C. 20005
Tel:     (202) 408-4600
Fax:     (202) 408-4699
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com
-and-
Joel P. Laitman
Christopher Lometti
Richard Speirs
Daniel B. Rehns
88 Pine Street, 14th Floor
New York, NY 10005
Tel:     (212) 838-7797
Fax:     (212) 838-7745
jlaitman@cohenmilstein.com
clometti@cohenmilstein.com
rspeirs@cohenmilstein.com
drehns@cohenmilstein.com

*Counsel for Lead Plaintiffs and Co-Lead
Counsel for the Class*